No. 20,408.

NANCY E. TAYLOR, *Appellant,* v. OTIS LAPORTE THISLER, Jr., *Appellee.*

#### SYLLABUS BY THE COURT.

CONTRACT—*Sale of Land—Claim of False Representations—Findings—No Fraud Shown—No Error in Record.* The proceedings examined, and *held,* that special findings of fact show that the plaintiff's claim respecting the nature of the transaction out of which the action arose was rejected by the jury, and the defendant's claim was accepted; that the effect of the findings was not impaired by any matter made the basis of an assignment of error, and that they are conclusive upon the rights of the parties.

Appeal from Dickinson district court; ROSWELL L. KING, judge. Opinion filed June 9, 1917. Affirmed.

*Thomas Dever,* and *W. S. Roark,* both of Junction City, for the appellant.

*G. W. Hurd, Arthur Hurd,* and *Bruce C. Hurd,* all of Abilene, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for false representations relating to the quantity of land embraced in a farm which the plaintiff purchased from the defendant. The verdict and judgment were for the defendant, and the plaintiff appeals.

The case is a very simple one. The plaintiff's claim was that she bargained for a definitely represented number of acres at a stated price per acre. In payment for the land the plaintiff transferred to the defendant a promissory note which she owned for $15,000, secured by mortgage. The face and the value of the note equaled the price of 150 acres of land, the represented quantity, at $100 per acre, the agreed price. This claim was supported by testimony. The defendant's claim was that he traded the farm, without regard to acreage or price per acre, for the note and mortgage. This claim was also supported by testimony. With the verdict for the defendant the jury returned special findings of fact in which the essential features of the negotiations were found to be in accordance with the defendant's claim, and so demolished the foundation for the plaintiff's lawsuit.

The plaintiff had a daughter, Mrs. Wibkin, who was her adviser and helper in trying to find a farm. Mrs. Wibkin visited the defendant's land several times, conducted negotiations for it, and otherwise acted for the plaintiff. On one occasion Mrs. Wibkin went with the defendant to see the land. She inquired about the acreage, and the defendant said his deed called for 150 acres. Subsequently the plaintiff, an agent, Boles, who was acting for both the plaintiff and the defendant, Mrs. Wibkin, and the defendant, all met at the city of Chapman and went from there to look at the farm. Mrs. Wibkin and the defendant rode in the same buggy. She asked if the defendant was sure about the acreage, if he was sure "it was that much," meaning 150 acres. The defendant replied he did not know, he had never surveyed the place, and had no way of knowing except by the deeds; if she thought the acreage would not hold out, he had spent enough of his time and was willing to drop the deal. After inspecting the farm, the four

Taylor v. Thisler.

persons mentioned returned to Chapman and went to the hotel there. The defendant narrated what occurred at the hotel as follows:

"During the time we were there they were talking about acreage, and said it did n't hardly seem that there was that much land there, and wanted to know if I would be willing to pay for a survey, or half a survey, I don't remember which. I told them at that time I would not, and if they wanted to survey it they did it at their own risk; it would n't make any difference in my trade either way; I was simply trading them this farm of mine for the mortgage that they had on property in Junction City."

In getting a full description of land from the defendant the mutual agent, Boles, asked him how many acres there were. The defendant replied there were supposed to be 150 acres, the deed and abstract called for 150 acres. At the request of Mrs. Wibkin, Boles made an, investigation of the number of acres in the farm, by inquiring of old residents and by telephoning the county clerk. On the trip to the farm from Chapman, Boles rode in the same conveyance with the plaintiff. He narrated the conversation at the hotel in Chapman. The material portion of his testimony follows:

"However, she asked Mr. Thisler about the acreage. She asked Mr. Thisler if he was sure there was 150 acres. He says : 'I don't know.' She says: 'Will you survey it?' He said: 'No.' She said: 'Will you stand for half of the survey?' He says: 'Mrs. Taylor, I will make a trade with you for your mortgage. If you want to survey that land you can do so. It is no difference to me whether the acreage runs over or not. I am simply trading for the mortgage.' "

The defendant testified that he did not know and had never attempted to ascertain the number of acres in the farm, that he did not at any time, either to the plaintiff or to Mrs. Wibkin, fix a price on the farm by the acre, and that no acre price was ever mentioned between them.

The plaintiff testified the trade for the $15,000 note and mortgage had been talked about before she went to Chapman. She had no conversation with the defendant prior to the one which occurred at the Chapman hotel. She asked the defendant if he was sure there were 150 acres in the farm, besides the railroad and other abatements, and he said there were. He said there were 150 acres. He gave her his price there at Chapman. He told her the price was $110 per acre, and she

agreed to take the land at $110 per acre. There was some talk about a survey, and the agent said the snow was too deep. She did not see the defendant again until the deed was drawn. Mrs. Wibkin narrated what occurred on that occasion as follows:

"Q. When was the third conversation? A. I think when the deal was made.

"Q. Where was that? A. At my mother's house.

"Q. Who was present? A. Mr. Thisler and Mr. Boles and myself and Mr. A. P. Trott.

"Q. What was said at that time? A. She said she would take the land. Mr. Thisler said he would take this mortgage in payment.

"Q. The deal had been made so far as the terms were concerned and they just met there to draw the deed? A. The deal wasn't made that night. Mr. Trott was there to witness the signature.

"Q. I say, the deal had been made and the terms agreed upon before that? A. Yes, sir.

"Q. And they just met at that time to close it up? A. Yes, sir."

The jury accepted the testimony on behalf of the defendant, and found specially that the defendant offered to sell the land to the plaintiff for the lump sum of $15,000, that he received no consideration other than the $15,000 note and mortgage, that he told the plaintiff she could have the land surveyed, that he would trade it to her for the mortgage regardless of the number of acres, and that the plaintiff closed the deal without a survey. There were just two versions of the transaction which closed the trade, a positively stated number of acres at a definite price per acre, and a trade of the farm for the mortgage regardless of acreage and price per acre. Both versions could not be true, and there was no basis in the evidence for a third version. The findings are incompatible with the plaintiff's version. They are in exact accord with the defendant's version and in harmony with the general verdict for him. Therefore, the controversy over the nature of the trade is at an end, unless something be discovered to impair the effect of the findings.

There was no instruction to the jury which induced the jury to accept the defendant's version of the transaction rather than the one proposed by the plaintiff.

There was a finding that the defendant represented the farm to contain "one hundred and fifty acres more or less." The finding negatives the plaintiff's claim that the defendant stated positively, in answer to pointed questions, that the farm certainly

contained 150 acres. The finding is perfectly consistent with the finding and the evidence that the defendant was trading regardless of acreage. No witness attributed to the defendant the precise words of the finding, and it is clear that the jury intended to indicate the indefiniteness of quantity expressed by the defendant's statements referred to above, the phrase "more or less" being picked up by the jury from some deeds offered in evidence. The jury found the defendant owned all the land described in the deed to the plaintiff. It is quite immaterial whether the finding be correct or not. Some special questions submitted by the plaintiff were not propounded to the jury. If they were all answered according to their form favorably to the plaintiff it would make no difference in the result.

While the cause was being argued the plaintiff filed a written application to open the case for the admission of some newly discovered evidence, the tenor of which was stated. The application was not verified and was overruled. At the hearing on the motion for a new trial the newly discovered evidence was not produced, by affidavit, deposition, or oral testimony of any witness, as the civil code (§ 307) requires. (*Greer v. Mercantile Co.*, 86 Kan. 686, 121 Pac. 1121.) Included in the application was a request for cross-examination of the defendant with respect to the newly discovered evidence. Whether or not the case should be opened for the further cross-examination of a witness was a matter within the discretion of the trial court. Since the evidence has not yet been vouched for by affidavit, deposition, or oral testimony of any witness, it can not be said that the court abused its discretion. Furthermore, the tenor of the newly discovered evidence was that the defendant had represented to the county officials that his farm contained 141 acres instead of 150 acres, and that he had made this representation for the purpose of furnishing data for the assessment and collection of taxes. If the evidence were true, it would make no difference in a lump trade of the land regardless of acreage for a note secured by mortgage.

The deed which the plaintiff accepted was in effect a quitclaim deed, and furnished no contract ground of liability on the part of the defendant for any deficiency in the quantity of land described.

The plaintiff devotes seven pages of the abstract to a "schedule" of rulings adverse to her, relating to the admission and rejection of evidence. Apparently the plaintiff scheduled all rulings adverse to her, without attempting to discriminate between those which were correct and incorrect, material and immaterial, prejudicial and unprejudicial. The court has looked into the matter just far enough to see that no claim of error can be made with any degree of sincerity respecting ruling after ruling on page after page, and the court is not inclined to conjecture concerning what the plaintiff relies on.

Some other subjects are presented in the briefs, but it is not necessary to extend this opinion to cover them, because they do not relate to anything which would impair the validity of the findings. The transaction was not of the kind upon which the plaintiff predicated her right to recover. The jury so found upon evidence which it chose to accept in opposition to other evidence. With the nature of the transaction established, the rights of the parties were established.

The judgment of the district court is affirmed.